IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BONNIE LYNN GORDON,

    Plaintiff,                        No. 2:10-CV-1198 GGH

    vs.

MICHAEL J. ASTRUE,              <u>ORDER</u>
Commissioner of
Social Security,

    Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles XVI and II, respectively, of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment is GRANTED, the Commissioner's Cross Motion for Summary Judgment is DENIED, this matter is remanded to the Commissioner for payment of benefits, and judgment is entered for the plaintiff pursuant to sentence four of 42 U.S.C. § 405(g).

<u>BACKGROUND</u>

        Plaintiff, born October 5, 1970, applied on March 27, 2006 for SSI and DIB alleging that she became disabled on November 11, 2005. (Tr. at 74-82.) Plaintiff contended she

was unable to work primarily due to chronic fatigue syndrome, as well as an adjustment disorder, fibromyalgia, and hypothyroidism. (Tr. at 111, 155.)

In a decision dated March 9, 2009, Administrative Law Judge ("ALJ") Stanley R. Hogg determined plaintiff was not disabled. The ALJ made the following findings:[1]

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since November 11, 2005, the alleged onset date (20 CFR § 404.1571 *et seq*. and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: chronic fatigue syndrome and hypothyroidism (20 CFR § 404.1521 *et seq*. and 416.921 *et seq*.).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
   The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

|   |     |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                              |
|---|-----|--------|

|     | listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1525, 404.1526, 416.925 and 416.926). |
|-----|---|
| 5.  | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform unskilled sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a). |
| 6.  | The claimant is unable to perform any past relevant work (20 CFR §§ 404.1565 and 416.965). |
| 7.  | The claimant was born on October 5, 1970 and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR §§ 404.1563 and 416.963). |
| 8.  | The claimant has at least a high school education and is able to communicate in English (20 CFR §§ 404.1564 and 416.964). |
| 9.  | Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 404.1569, 404.1569a, 416.969, and 416.969a). |
| 11. | The claimant has not been under a disability, as defined in the Social Security Act, from November 11, 2005 through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)). |

(Tr. at 39-43.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Rejected the Opinion of the Treating Physician Without a Legitimate Reason; B. Whether the ALJ Failed to Properly Credit Plaintiff's Testimony and Third-Party Statements as to the Nature and Extent of Her Functional Limitations; and C. Whether the ALJ Erred in Assessing Plaintiff's RFC,

3

Utilizing the GRIDS, and Failing to Secure the Testimony of a Vocational Expert.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

A. Whether the ALJ Rejected the Opinion of the Treating Physician Without a Legitimate Reason

Plaintiff alleges that the opinion of her treating physician, Dr. Xu, was improperly rejected by the ALJ. In particular, plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Xu's opinion that plaintiff would require at least a ten (10) minute break every hour.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[2]

---

[2] The regulations differentiate between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513(a), (e); 416.913(a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered

4

Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. Lester, 81 F.3d at 830-31. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[3] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Social Security Ruling 99-2p provides further guidance on the resolution of conflicting medical evidence in CFS cases. "Medical opinions from treating sources about the

---

"other sources." Id. Medical opinions from "acceptable medical sources" have the same status when assessing weight. See 20 C.F.R. §§ 404.1527(a)(2), (d); 416.927(a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

[3] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527.

nature and severity of an individual's impairment(s) are entitled to deference" and will be given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in the case record. See SSR 99-2p, at 5-6. Indeed, "[o]pinions from an individual's medical sources, especially treating sources, concerning the effects of CFS on the individual's ability to function in a sustained manner in performing work activities or in performing activities of daily living are important in enabling adjudicators to draw conclusions about the severity of the impairment(s) and the individual's RFC." Id. at 6.

In this case, there was no contradictory opinion as to plaintiff's diagnosis of CFS. (Tr. at 39-40, 166, 187, 205, 206-211, 240, 241.) To the contrary, the ALJ specifically found plaintiff's CFS to constitute a severe impairment. (Tr. At 39.) Instead, the contradiction lies between the various physicians' opinions on plaintiff's limitations resulting from this impairment, particularly with respect to the need for hourly rest breaks. In regard to this, the ALJ stated:

> Dr. Xu [plaintiff's treating physician] essentially relegates the claimant to sedentary exertion because she cannot engage in prolonged standing or walking but can sit for 8 hours a day. Other limitations proffered involving no work at heights or other hazardous situations or around chemicals, etc., or that the claimant cannot climb or balance do not significantly erode the remaining occupational base for sedentary work because most job situations do not involve exposure to such activities or working conditions. See, SSR 85-15. However, the undersigned cannot accept Dr. Xu's limitation that the claimant needs a 10-minute break every hour because that is simply based on the claimant's subjective complaints rather than objective medical signs or findings.

(Tr. at 42.)

As an initial matter, rejecting Dr. Xu's opinion solely on the premise that it was based, at least in part, on plaintiff's subjective complaints is improper in the context of a CFS case. Reddick v. Chater, 157 F.3d 715, 725-26 (9th Cir. 1998). As the Ninth Circuit explained, "[c]hronic fatigue is defined as '*self-reported* persistent or relapsing fatigue lasting six or more consecutive months.'" Id. at 726 (emphasis in original) (quoting Centers for Disease Control,

6

The Chronic Fatigue Syndrome: A Comprehensive Approach to its Definition and Study, 121 ANNALS OF INTERNAL MEDICINE 954 (1994)).  "Although CFS is accompanied by symptoms such as body aches, low-grade fevers, memory problems, headaches, and extended flu-like symptoms...the presence of fatigue is necessarily self-reported.  The final diagnosis is made 'by exclusion,' or ruling out other possible illnesses." Reddick, 157 F.3d at 726.  Of course "[a]n ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been *properly discounted as incredible*." Tommasetti, 533 F.3d at 1041 (internal citations omitted) (emphasis added).  However, as discussed *infra*, the ALJ here improperly discounted plaintiff's subjective complaints (and third-party statements) regarding the nature and extent of her functional limitations.

        In any event, a careful review of the record reveals that Dr. Xu's opinion in her March 23, 2006 assessment was not based merely on plaintiff's subjective complaints.  As the ALJ acknowledged, plaintiff's medical records indicate a long documented history of fatigue beginning with her pregnancy in the late 1990s.  (Tr. at 39, 186-87.)  She first started seeing Dr. Xu on August 24, 2004 and consistently complained of fatigue (Tr. at 166, 174-201.)  She also reported various other hallmark symptoms of CFS such as aching in her muscles and joints, post-exertional fatigue, non-restful sleep, weight gain, and difficulty with concentration and short-term memory.  (Tr. at 184-87.)  Dr. Xu apparently attempted to eliminate other potential causes through blood tests and a sleep test, which were unremarkable.  (Tr. at 171-73, 175-79.)  In early 2005, Dr. Xu also referred plaintiff to an infectious diseases physician, Dr. Kenneth Lee, for a consultation.  (Tr. at 182-85.)  Dr. Lee found no evidence of a serious infectious disease and remarked that plaintiff "seems to fit the picture of probable chronic fatigue syndrome."  (Tr. at 187.)  After ordering all these tests and consultations to eliminate other causes, seeing plaintiff approximately 9 times over a period of less than two (2) years (Tr. at 171-201), and tracking her progress, Dr. Xu was in the best position to assess the effects of CFS on plaintiff's ability to

function and evaluate her limitations.[4]  See Smolen, 80 F.3d at 1285 ("Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians"); Lester, 81 F.3d at 832-33 ("The Commissioner is required to give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective judgments").[5]

        However, the ALJ instead credited the opinions of two non-examining State Agency physicians and an examining consulting physician for the Department of Social Services who imposed no limitation of hourly breaks.  Interestingly, these other physicians' opinions varied significantly as to recommended limitations (SA physician Dr. Clancey limiting plaintiff to two hours of standing or walking in a workday, and SA physician Dr. Phamm and examining physician Dr. Brimmer finding plaintiff capable of standing or walking about 6 hours in a workday.)  (Tr. at 207, 240, 242.)  Despite acknowledging that some of these assessments seemed "too expansive," the ALJ nonetheless rejected Dr. Xu's hourly break limitation and

---

    [4] Defendant points to isolated portions of the record to discount Dr. Xu's assessment that hourly breaks are warranted.  Although true that Dr. Xu noted plaintiff at one time working full time while feeling fatigued, (Tr. at 180), that notation was dated November 9, 2004.  Since then plaintiff's condition worsened, she started working part time, and she ultimately lost her job in November 2005.  (Tr. at 11, 39.)  Similarly, defendant's reference to plaintiff "walking several miles" is also somewhat misleading because plaintiff merely informed Dr. Lee back in early 2005 that she "tries to exercise with walking two miles three times a week on the treadmill."  (Tr. at 186.)  Finally, that Dr. Lee found no muscle wasting at that time is not dispositive, because plaintiff did not profess "to lie in a fetal position all day."  See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).  Moreover, while muscular atrophy is undoubtably a sign of extreme inactivity, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits...."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

    [5] Although defendant argues that a medical source opinion that an individual "has a particular residual functional capacity (RFC)" or "that concerns the application of vocational factors" is not entitled to any special significance because of its source (Def's Mot. at 8), Dr. Xu never stated that plaintiff had a particular RFC nor discussed vocational factors.  She only specified some limitations that could be utilized to assess a RFC, including that plaintiff would require an hourly break of at least 10 minutes.

8

instead found Dr. Clancey's limitation of two hours of standing or walking with normal breaks[6] to be "more reasonable and supportable." (Tr. at 42.)

   The problem is that the ALJ did not set forth specific and legitimate reasons for adopting the non-treating physicians' conclusions over those of Dr. Xu.  "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence'... If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Orn, 495 F.3d at 632 (citations omitted).  Likewise, the opinion of a nonexamining physician cannot by itself constitute substantial evidence justifying rejection of the treating physician's opinion. Lester, 81 F.3d at 831.  Despite generally agreeing with Dr. Xu's diagnosis of CFS, Dr. Brimmer, who only examined plaintiff once, neither referenced Dr. Xu's hourly break limitation nor gave any reasons based on clinical findings why an hourly break would not be warranted.  Similarly, non-examining SA physicians Clancey and Phamm did not articulate any bases for disagreeing with Dr. Xu's conclusion as to the need for hourly breaks. Interestingly, Dr. Phamm indicated that the treating physician's conclusions about plaintiff's limitations and restrictions were not significantly different from his own.  (Tr. at 245.)

   Defendant questions Dr. Xu's credibility based on plaintiff's request for "paper work for Social Security" from Dr. Xu and Dr. Xu's notation on March 23, 2006 that she "need[ed] more information from [patient]" and that "[patient] will furnish me detailed instruction for the form." (Tr. at 200-01.)  However, nothing in that notation suggests that Dr. Xu was willing to base her substantive responses to the form solely on plaintiff's instructions. The fact that Dr. Xu may have needed further information or instructions from plaintiff related to

---

[6] Even though plaintiff suggests that SA physician Dr. Clancey did not disagree with Dr. Xu's hourly break limitation (Pl.'s Mot. at 18), Dr. Clancey in fact only recommended "normal breaks." (Tr. at 207.)  Normal breaks include "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." SSR 96-9p.

9

completion and submission of the form does not by itself undercut Dr. Xu's substantive medical opinions.

Although it is the ALJ's responsibility to resolve conflicting medical evidence, he or she must do so with appropriate deference to the treating physician's opinions. See Smolen, 80 F.3d at 1285; SSR 99-2p, at 5-6. Dr. Xu's opinion was well supported and consistent with her diagnoses and findings from almost two years of treatment, whereas the non-treating physicians did not articulate any bases or different clinical findings supporting and explaining their departure from Dr. Xu's hourly-break restriction. Accordingly, the ALJ erred in rejecting Dr. Xu's conclusion that hourly rest breaks are warranted.

B. Whether the ALJ Failed to Properly Credit Plaintiff's Testimony and Third-Party Statements as to the Nature and Extent of Her Functional Limitations

As discussed above, the ALJ also suggested that Dr. Xu's opinion was based on plaintiff's subjective complaints, which he did not find entirely credible. Plaintiff contends that the ALJ erred in discounting her testimony as well as third-party statements as to the severity of her symptoms and resulting limitations.

A two-step analysis is used to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. First, the claimant "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." Smolen, 80 F.3d at 1281 (citations omitted). "[T]he claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. at 1282. Second, once this initial showing is made and there is no affirmative evidence of malingering, "the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so." Id. at 1283-84. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81

F.3d at 834; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  In weighing a claimant's credibility, the ALJ may consider her reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains.  See Smolen, 80 F.3d at 1284.

In his decision, the ALJ summarized portions of plaintiff's testimony regarding her symptoms and their severity:

> At the hearing, the claimant testified she was terminated from her last job because she couldn't concentrate to keep things straight.  She had difficulty with her hands and with sitting due to back pain.  She can't sleep at night and rests during the day.  She is also fatigued.  Sitting causes pain in her hips and legs; she gets shooting pain every 10 minutes however she mostly changes position while sitting.  When standing she needs to shift and sometimes has to squat.  She can stand a couple of minutes to 5 or 10 minutes at one time and walking causes fatigue and pain and she has to rest after 15 minutes.   At the grocery store lifting 5 pounds of hamburger caused her pain.  She watches movies at home for 20 to 30 minutes but has difficulty following the narrative.  She is no longer able to follow a story line when reading a book.  Her long term memory is fine.  Her short term memory is difficult and forgets what she has talked with her children until they later bring it to her attention.  She gets dizzy 3 to 5 times a day and has to sit down.  She has to sit to take a shower.  She doesn't do housework, yard work, cooking, or any social activities.  She does laundry only when absolutely necessary.

(Tr. at 41.)

In this case, the ALJ specifically found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 41.) Also, he did not find, or point to, any affirmative evidence of malingering.[7] Nevertheless, the ALJ concluded:

> [A]s noted herein the medical evidence contains very few objective signs or findings and otherwise fails to support the marked level of

---

[7] In fact, there is evidence to the contrary in the record.  For example, Dr. Weber noted that plaintiff "did appear to try her best on all the tests" during his April 26, 2006 psychological evaluation.  (Tr. at 203.)

11

      fatigue, pain, depression, or level of dysfunction alleged by either the claimant or Mr. Jensen and thus the undersigned cannot entirely credit such assertions.  However, the undersigned does credit her complaints to the extent she is restricted from greater than a sedentary level of exertion, on the basis of her fatigue, back and leg pain and her adjustment disorder.  Her adjustment disorder restricts her to unskilled work.

(Tr. at 41.)

      Plaintiff's testimony regarding the severity of her symptoms cannot be discredited merely because it is unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991).  Nor can the above general and conclusory findings be sufficient to discount her testimony—the ALJ must outline what specific testimony is not credible and what evidence undermines plaintiff's complaints.  Lester, 81 F.3d at 834.

      The ALJ's decision essentially only refers to two specific items in the record that allegedly undermines plaintiff's credibility.  First, the ALJ noted that plaintiff's "statements about impaired concentration and memory are not supported by the mental examination performed on April 26, 2006" by Dr. Weber where she was "noted to have only mild cognitive deficits with a GAF score of 65 indicating mild impairment."  (Tr. at 42.)  However, Dr. Weber qualified that diagnosis by stating that "her work performance would most likely be much worse than is indicated by the test scores.  An eight-hour work day would lead to much more difficulty for her than the approximately two hours she spent on the current evaluation."  (Tr. at 204.)  Moreover, Dr. Weber's evaluation was conducted more than two years prior to plaintiff's testimony at the hearing.  Given that plaintiff's condition seemingly worsened during that time, Dr. Weber's April 2006 assessment in itself does not convincingly discredit her September 2008 testimony.  Second, the ALJ stated that plaintiff's fatigue should not preclude sedentary work because she was "observed to sit without discomfort during the hearing for approximately 45

////

////

////

minutes[8] and did not appear distracted by pain." (Tr. at 42.) "In instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject that individual's subjective complaints solely on the basis of such personal observations." SSR 88-13. It is unlikely that the ALJ was able to form an accurate picture of plaintiff's pain, fatigue, and other symptoms during such a short hearing, particularly given the fact that CFS is "characterized by periods of exacerbation and remission." See Reddick, 157 F.3d at 722 (citations omitted). Also, plaintiff did testify that she experienced pain during the hearing. (Tr. at 14.) In sum, these reasons, without more, do not constitute clear and convincing reasons for rejecting plaintiff's testimony. The ALJ did not point to any meaningful inconsistencies in her testimony,[9] and his blanket statement that "[t]here is an element of exaggeration of the claimant's symptoms and limitations" is wholly insufficient. (Tr. at 42.)

Also troubling is the fact that the ALJ failed to provide specific reasons for rejecting certain third-party statements submitted. As the Ninth Circuit explained:

> "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006); see also 20 C.F.R. §§ 404.1513(d)(4), (e). Such testimony is competent evidence and "cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness." Id. Further, the reasons "germane to each witness" must be specific. Stout, 454 F.3d at 1054 (explaining that "the ALJ, not the district court, is required to provide *specific* reasons for rejecting lay testimony") (emphasis added).

---

[8] The duration of the actual hearing was in fact 33 minutes beginning at 11:14 a.m. and concluding at 11:47 a.m. (Tr. at 8, 29.)

[9] The only potential inconsistency the ALJ alluded to is plaintiff's statement to Dr. Brimmer on May 25, 2007 that she cooks for her family (Tr. at 237), whereas she testified at the subsequent hearing on September 15, 2008 that she does not cook, because she burns the food due to lack of concentration. (Tr. at 24.) However, because plaintiff's condition worsened over time and her testimony at the hearing confirms that she previously attempted cooking, the statements are not necessarily inconsistent when put in proper context.

13

Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).  Failure to discuss lay testimony is not harmless error unless the reviewing court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, 454 F.3d 1050, 1056 (9th Cir. 2006).

Plaintiff's former fiancé, Mr. Jensen, who lived with plaintiff for two periods in 2003 and 2006, submitted a statement indicating that plaintiff experienced "extreme fatigue and migraine headaches that would last for days at a time," and that it was not uncommon for her to be in bed all day sometimes.  He noted that she also experienced full body pain that would make her nauseous.  Mr. Jensen reported that plaintiff would frequently miss work because she could not function or perform simple tasks due to pain.   By 2006, they rarely socialized with friends or family and most of the domestic responsibilities were left to Mr. Jensen, because she could not accomplish much on her own.   He also opined that her condition became worse with time.  (Tr. at 161.)  The ALJ did not provide any specific reasons for his cursory rejection of Mr. Jensen's statement other than the same reasons he used to discount plaintiff's testimony, discussed above. (Tr. at 41.)  Mr. Jensen, having lived with plaintiff for certain periods, clearly had personal knowledge of her daily activities.   Also, as her former fiancé, he does not appear to have any personal financial interest in her receipt of benefits.  Nevertheless, the ALJ did not specify any reasons germane to Mr. Jensen for disregarding his statement.

Furthermore, the ALJ entirely failed to reference a statement submitted by plaintiff's sister, Stacey Lacey.  Ms. Lacey stated that plaintiff can no longer physically do the things she loved and that her "daily life is a challenge":

> I now see someone who is extremely limited, weak and endures pain in her daily life.  I have seen her so exhausted and fatigued, she had to finish her shower sitting down, needed help to dry off and get back into bed.  I see her walking towards me in great pain as if she aged 30 years by the way she is walking.  I have noticed many memory issues to where she would walk into another room, stand their [sic] blank forgeting [sic] why she went.  Bonnie has called me in her car scared not realizing where she was going.  We speak on a regular basis and often she repeats herself about

something we have already discussed.
(Tr. at 158.) The extreme fatigue and exhaustion discussed by Ms. Lacey would certainly suggest that plaintiff's ability to work is significantly affected and further bolsters Dr. Xu's conclusion that hourly breaks are necessary. Ms. Lacey and Mr. Jensen's statements are consistent with each other, as well as the trend of worsening fatigue, pain, and other symptoms reported in plaintiff's various disability reports and fatigue questionnaire, and testified to at the administrative hearing. (Tr. at 11-26, 110-116, 117-118, 134-139, 147-153.) Therefore, failure to meaningfully address these third-party statements is not harmless error, because they corroborate plaintiff's testimony and complaints. Had these statements been fully credited, a different ALJ could likely have reached a different disability determination.

In sum, the ALJ erred in rejecting the treating physician's opinion and in failing to credit plaintiff's testimony, as well as third-party statements, regarding the nature and extent of her functional limitations. In light of these conclusions, the only remaining issue is whether the case should be remanded for additional evidence or an award of benefits, a decision within the discretion of the court. Smolen, 80 F.3d at 1292. An award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings" and "the record has been thoroughly developed." Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988). This is a recognition of the "need to expedite disability claims." Id. at 1401.

Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating physician, the opinion is credited as a matter of law. Lester, 81 F.3d at 834. Similarly, where the ALJ improperly rejects the claimant's testimony regarding her limitations and the claimant would be disabled if her testimony were credited, that testimony is credited as a matter of law. Id. Considering the record as a whole, including the evidence the ALJ erroneously discredited, the court concludes that the ALJ's finding that plaintiff could have performed the full range of unskilled sedentary work is not supported by substantial evidence in the record. If the treating physician's opinion that plaintiff would require at least a 10-minute break every hour

were properly credited, it would significantly erode the unskilled sedentary occupational base, because very few, if any, positions would be able to accommodate a 10-minute break every hour. Remand for an award of benefits is appropriate.[10]

CONCLUSION

One can understand the ALJ's reticence about awarding lifetime disability benefits to a relatively young individual who claims she is "tired"– who isn't? Nevertheless, the experts in the field recognize chronic fatigue syndrome as a bona fide affliction which can disable a person. Accordingly, for the reasons set forth above, IT IS ORDERED that plaintiff's Motion for Summary Judgment is GRANTED, the Commissioner's Cross Motion for Summary Judgment is DENIED, this matter is remanded to the Commissioner for payment of benefits, and judgment is entered for the plaintiff pursuant to sentence four of 42 U.S.C. § 405(g).

Furthermore, given the satisfactory showing made in the Declaration of Bess M. Brewer (Doc. No. 17), the April 11, 2011 order to show cause why this case should not be dismissed for lack of prosecution is discharged.

DATED: August 23, 2011

   /s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH/6
Gordon1198.ss.wpd

---

[10] Plaintiff also claims that the ALJ's RFC finding for unskilled sedentary work did not properly account for her mental limitations; in particular Dr. Weber's conclusion that she was moderately impaired in responding appropriately to work situations (attendance, safety etc.) and dealing with changes in a routine work setting. (Tr. at 205.) Defendant cites some authority for the proposition that an RFC for unskilled work adequately compensates for a claimant's many moderate mental limitations. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008). However, in light of the court's conclusion that remand for an award of benefits is appropriate based on the treating physician's opinion that hourly 10-minute breaks are required, resolution of this issue is unnecessary.